UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JAMES IRVING DALE,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>KELLY TJEERDSMA, MICHAEL MEYER, REBECCA SCHIEFER, GEORGE DEGLMAN,  UNKNOWN DEPARTMENT OF CORRECTIONS MEDICAL STAFF,  UNKNOWN DEPARTMENT OF CORRECTIONS STAFF, ROBERT DOOLEY, TAMMY DEJONG, CORY TYLER, ANDRA GATES, MICHAEL JOE HANVEY, MIKE DOYLE,<br><br>　　　　　　　Defendants. | 4:14-CV-04102-LLP<br><br><br>REPORT AND RECOMMENDATION (MOTION TO DISMISS, DOCKET 20) |

**INTRODUCTION**

Plaintiff, James Irving Dale ("Dale") is an inmate at the Mike Durfee State Prison ('MDSP") in Springfield, South Dakota.  He has filed a *pro se* civil rights lawsuit pursuant to 42 U.S.C. § 1983 and has been granted *in forma pauperis* status.  He has, as ordered, paid his initial partial filing fee of $4.00.

On August 12, 2014, Dale moved to amend his Complaint (Docket 9).  Judge Simko granted Dale's motion to amend on August 21, 2014 (Docket 10).  Thereafter, Dale filed his proposed Amended Complaint, along with a supporting Affidavit, on September 9, 2014.  Dockets 11 and 12.  The Amended Complaint was screened as required by the Prison Litigation Reform Act

("PRLA"), 28 U.S.C. § 1915A.  On October 24, 2014, the Court determined the Amended Complaint was sufficient to survive screening and entered an Order directing that it be served.  Docket 13.  The US Marshals served Dale's Complaint upon Defendants Deglman, DeJong, Dooley, Doyle, Gates, Hanvey, Meyer, Schiefer, Tjeerdsma and Tyler as directed by Plaintiff Dale.  On October 28, 2014, Dale filed a motion to supplement.  Docket 15.  On December 3, 2014, the Defendants  moved, in lieu of an Answer,  to dismiss Dale's Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b) (Docket 20).  On December 16, 2014, Dale filed an additional motion to supplement (Docket 24).  The defendants resisted both motions to supplement (Docket 26).  The Court has granted Dale's motions to supplement by way of a separate order.  The defendants filed a brief in support of their motion to dismiss (Docket 21) with attached exhibits.  Dale resists the defendants' motion to dismiss with an affidavit (Docket 29) and a brief (Docket 28).   Defendants have also filed a Reply (Docket 32) to Dale's Response, with attachments.

## DISCUSSION

Dale's Amended Complaint (Docket 11) names six Defendants, along with "unknown Department of Corrections Staff" and "unknown Department of Corrections Medical Staff."  Liberally construed, Dale's Amended Complaint alleges three causes of action:  (1) a First Amendment freedom of religion claim, asserting that Dale is Jewish and eats a Kosher diet, but that he has been disciplined for trading his kosher food for other kosher food, while other

2

inmates who trade their special diet foods are not disciplined for the same behavior; (2) an Eighth Amendment cruel and unusual punishment claim, alleging that he suffers from Hepatitis C and low blood sugar/diabetes, but the medical care he receives from the defendants rises to the level of cruel and unusual punishment; and (3) a retaliation and Due Process claim for exercising his right to access to the courts and for exercising his First Amendment right to practice his religion.   Dale asserts he has been singled out and disciplined differently or more harshly from other inmates because he has previously filed a lawsuit against the defendants, and because he chooses to eat a religious diet.

## A.   Rule 12(b)(6) and 28 U.S.C. § 1915 Screening Standards

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii))  and 1915A(b)(1), a prisoner's complaint should be dismissed on screening if it "fails to state a claim upon which relief may be granted."  This standard is the same standard as is used to determine whether a complaint satisfies the standards of FED. R. CIV. P. 12(b)(6).  Kane v. Lancaster County Dept. of Corrections, 960 F.Supp. 219 (D. Neb. 1997).  "In evaluating whether a pro se plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded, . . . to less stringent standards than formal pleadings drafted by lawyers.' " Jackson v. Nixon, 747 F.3d 537, 541 (8th Cir. 2014) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).  "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then

the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper framework." Id. at 544 (quoting Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004)).

The defendants' motion to dismiss is based on FED. R. CIV. P. 12(b)(6), which allows dismissal if the plaintiff has failed to state a claim upon which relief can be granted. The United States Supreme Court addressed the standard that district courts are to apply to Rule 12(b)(6) motions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).

The law predating Twombly and Iqbal held that under Rule 12(b)(6), the court should not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (emphasis added). However, Conley's "no set of facts" language was overruled in Twombly. Twombly, 550 U.S. at 563. Instead, the Court adopted a standard by which plaintiffs must plead "enough facts to state a claim to relief that is *plausible* on its face." Id. at 570 (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)). A complaint does not need "detailed factual allegations" to survive a motion to dismiss, but a plaintiff must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action. Id. at 555 (citing Papasan v. Allain, 478

4

U.S. 265, 286 (1986)).  The Court also imposed a "plausibility standard,"

holding that a claim "requires a complaint with enough factual matter (taken

as true)" to support the conclusion that the plaintiff has a valid claim.  Id.

at 556.  The plaintiff's complaint must contain sufficiently specific factual

allegations in order to cross the line between "possibility" and "plausibility" of

entitlement to relief.  Id.

There are two "working principles" from Twombly and Iqbal.  Iqbal, 556

U.S. at 678.  First, courts are not required to accept as true legal conclusions

"couched as factual allegation[s]" contained in a complaint.  Id. (citing Papasan,

478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Id. (quoting

Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for

a plaintiff armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-

79.

Second, the plausibility standard is a "context-specific task that requires

the reviewing court to draw on its judicial experience and common sense."  Id.

at 679 (quoting decision below Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir.

2007)).  Where the plaintiff's allegations are merely conclusory, the court may

not infer more than the mere possibility of misconduct, and the complaint has

alleged–but has not "show[n]"–that he is entitled to relief as required by Rule

8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying

statements in the complaint that are conclusory and therefore not entitled to

the presumption of truth.  Id. at 679-680.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a plaintiff's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; FED. R. CIV. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  It is through the lens of Twombly and Iqbal that the court examines Dale's amended complaint and supporting documentation and the Respondents' motion to dismiss.

**B. The Court Will Exclude the Parties' Submissions Which are Outside the Pleadings Pursuant to Rule 12(d).**

In the course of arguing their positions, both parties attached copies of various documents to their papers which are outside the pleadings.    Dale submitted an affidavit (Docket 29) which attached South Dakota DOC disciplinary reports which he claims are the originals, as opposed to the versions submitted by the defendants which he claims are "forged" copies (see Docket 26-1 and 26-3) submitted by defendants in opposition to Dale's motions to supplement.   In response, the defendants filed Docket 32 with attachments. Docket 32 attached an affidavit of Tammy DeJong (Docket 32-2) along with an affidavit of counsel (Docket 32-1) explaining there was a misunderstanding which led to the difference between the copies of disciplinary reports submitted by defendants and those submitted by Dale.  Id.  Defendants now concede the version submitted by Dale are accurate.  See Docket 32-1, ¶7.

6

The defendants also submitted copies of portions of the "Inmate Living Guide" (see Docket 21-1, 21-2).  In their brief, defendants urge the reference to these various documents need not be excluded nor render the motion as one for summary judgment under Rule 56.  See Docket 21 at p.4-5, un-numbered footnote.  The defendants assert the Inmate Living Guide is an item "specifically referenced in Plaintiff's Amended Complaint, and further contains matters of public record     . . ." because it is an "agency document of the South Dakota Department of Corrections . . .and not subject to reasonable dispute," rendering it exempt from the mandate of FED. R. CIV. P.12(d).[1]  That rule provides:

> **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

"Most courts view matters outside the pleading as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what was said in the pleading." BJC Health System v. Columbia Casualty Co., 348 F.3d 685, 687 (8th Cir. 2003) (citation omitted).  On the other hand, "in a motion to dismiss, a court

---

[1] Dale did not specifically refer to or attach the Inmate Living Guide in his Amended Complaint (Docket 11) or his Supporting Affidavit (Docket 12). In those documents, however, Dale referred to "DOC policy" or discipline reports he had been issued by the various named defendants and the classification reference number for the disciplinary offense as it is designated in the Inmate Living Guide.  For example, "failure to follow a religious diet" is classified as a minor violation and is designated as "V-39."   Dale likewise did not attach the actual discipline reports or copies of the reports to his Complaint.

may consider matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record." United States ex. rel. Kraxberger v. Kansas City Power and Light Co., 756 F.3d 1075, 1083 (8th Cir. 2014) (citation omitted).  In United States v. Eagleboy, 200 F.3d 1137, 1140 (8th Cir. 1999) the Eighth Circuit held that "publicly available policy statements of the [federal] Department of Interior" were "akin to judicial opinions, treatises, law review articles, public records and the like" and were thus amenable to judicial notice.   This court has found four cases in which inmate handbooks have been judicially noticed.  Smith v. Polk County, Florida, 2005 WL 1309910 at *3 (M.D. Florida, May 31, 2005); Johnson v. Otto, 2006 WL 3253622 at *2, n. 1 (M.D. Fla., Nov. 8, 2006); Wakeley v. Giroux, 2014 WL 1515681 at * 11 (M.D. Pa., April 15, 2014); Allen v. Washington County, Tennessee, 2005 WL 1421768 at *2 (E.D. Tenn., June 17, 2005).

Neither party has cited authority, however, and the Court has found none, in which the Eighth Circuit or any other federal court has made a similar determination regarding an individual inmate's disciplinary reports.

The parties do not dispute the authenticity of the Inmate Living Guide, and it is a publicly available document.  Dale's Amended Complaint, however, asserts the policies it contains have not been uniformly or correctly applied, and he offers the disciplinary reports in support of his assertion.  The defendants offer the same disciplinary reports in support of their motion to dismiss.  That the parties have now reached agreement about the authenticity of the disciplinary reports does not change the fact that they are  "documents

8

outside the pleadings" for purposes of  considering the defendants' motion to dismiss.   The reports are not publicly available and the parties clearly disagree about the significance they hold to Dale's claims.

The court will therefore take judicial notice of the Inmate Living Guide, but not the disciplinary reports and will the proceed to analyze Dale's claims on the basis of his Amended Complaint (Docket 11), accompanying incorporated affidavit (Docket 12) and the newly allowed supplements (Dockets 15 and 24) to determine whether it survives the defendants' motion to dismiss.

## C.   Dale's Claims

Dale's Complaint is divided into three claims:  (1) a First Amendment free exercise claim, asserting the defendants have interfered with his right to exercise his Jewish faith; (2) an Eighth Amendment claim, asserting the defendants' treatment of Dale's medical conditions (hepatitis C and diabetes) rises to the level of cruel and unusual punishment; and (3) retaliation/Due Process violation claims, asserting the defendants have abused the standard DOC disciplinary procedures to retaliate against him because he has exercised his constitutional rights to practice his religion and to access the courts.  The sufficiency of Dale's pleadings as to these three claims is examined in turn below.

### 1. First Amendment Free Exercise Claim

The Free Exercise Clause of the First Amendment protects an individual's right to freely practice religion.  To sufficiently state a claim under the Free Exercise Clause, an individual must first allege that a policy or action "place[s]

9

a 'substantial burden' on his ability to practice his religion." Patel v. United

States Bureau of Prisons, 515 F.3d 807, 813 (8th Cir. 2008) (citations omitted);

see also Weir v. Nix, 114 F.3d 817, 820 (1997) (analyzing a Free Exercise

Clause claim). To constitute a substantial burden on one's ability to practice

his or her religion, the policy or action:

> must significantly inhibit or constrain conduct or expression that
> manifests some central tenet of a person's individual religious
> beliefs; must meaningfully curtail a person's ability to express
> adherence to his or her faith; or must deny a person reasonable
> opportunities to engage in those activities that are fundamental to
> a person's religion.

Patel, 515 F.3d at 813 (quoting Murphy v. Mo. Dep't of Corr., 372 F.3d 979,

988 (8th Cir. 2004) (quotations and alterations omitted)). For purposes of

determining if Dale has stated a claim upon which relief may be granted, the

Court need only determine whether Dale has alleged that a policy or action

placed a substantial burden on his ability to practice his religion.

In the instant case, Dale alleges he is Jewish and thus follows a kosher

diet.  He alleges all religious diets (Kosher, Halal, Vegetarian and non-pork) are

the same.  He further alleges that although other inmates who have special diet

trays are allowed to trade food, he is not allowed to trade from his kosher tray

for other kosher food (i.e. a kosher orange for a kosher apple).  Dale also

asserts DOC personnel have specifically informed him he is being particularly

scrutinized "to make sure he is following his sincerely held beliefs."  Dale

asserts he is falsely or wrongly disciplined for failing to follow his religious diet,

even when the food he eats does not violate his kosher diet.  He further asserts

DOC staff "hover" around him in the dining hall "waiting for him to trade or

give away part of his kosher tray so that they can file a discipline report"
against him, while other inmates trade food freely with no repercussions.

Based on these facts, the Court finds that Dale has sufficiently pleaded
claims under the Free Exercise clause for purposes of surviving a motion to
dismiss pursuant to FED. R. CIV. P.12(b)(6).  Liberally construed, Dale has
alleged that eating a kosher diet is a tenet of his religion and that defendants
have curtailed his ability to express adherence to his religion by harassing him,
treating him unequally from other inmates, and/or filing false disciplinary
reports against him in an effort to chill the free exercise of his religion.    For
purposes of a motion to dismiss, therefore, the court finds that Dale has
sufficiently alleged that defendants have imposed a substantial burden on his
ability to practice his religion.  The court recommends the defendants' motion
to dismiss be DENIED as to this claim.

### 2. Eighth Amendment Deliberate Indifference Claims

"[D]eliberate indifference to serious medical needs of prisoners
constitutes 'the unnecessary and wanton infliction of pain' proscribed by the
Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg
v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is
manifested by prison doctors in their response to the prisoner's needs or by
prison guards in intentionally denying or delaying access to medical care or
intentionally interfering with the treatment once prescribed." Id. at 104–05.

But "this does not mean, however, that every claim by a prisoner that he
has not received adequate medical treatment states a violation of the Eighth

Amendment." Id. at 105. "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.  Allegations of negligence will not suffice. See  Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) ("The prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.").  "Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment." Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1991) (citations omitted).  See  also Allard v. Baldwin, 779 F.3d 768, 772 (8th Cir. 2015) (deliberate indifference can be shown by the defendant's decision to take an easier and less efficacious course of treatment, or showing the defendant intentionally delayed or denied access to medical care).

The deliberate indifference standard includes both an objective and subjective component. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). The plaintiff "must demonstrate (1) that he suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Id. (citing Coleman, 114 F.3d at 784).   When a delay in treatment is alleged, "the objective seriousness of the deprivation should also be measured by reference to the effect of the delay." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997)(internal punctuation and citations omitted).  "A serious medical need is one that has been diagnosed by a physician as

12

requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman, 114 F.3d at 784. To be liable for deliberately disregarding medical needs, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In this case, Dale has alleged he was diagnosed with hepatitis C in 1998. He claims the defendants have denied appropriate treatment for his hepatitis C. Dale asserts that left untreated, his hepatits C condition will result in in liver cancer and cirrhosis, but there is a particular treatment available (Ribavirin and Sofosbuvir) which has a 90% cure rate. Dale further claims that his liver was biopsied in March, 2014, which revealed Grade 2 fibrosis of the liver and Stage 1 cirrhosis of the liver. Dale further asserts he has been deemed ineligible by prison medical staff for the appropriate treatment for his hepatitis C condition because he is not "sick enough" and because the defendants told him appropriate treatment is too expensive. Dale believes he would be eligible for appropriate treatment for his hepatitis C if he were not incarcerated. For purposes of a motion to dismiss, Dale has sufficiently alleged a (1)serious medical need ; (2) that the defendants knew of but were deliberately indifferent to the need; and (3) that the delay in treatment has caused him serious injury.

Regarding his diabetic condition, Dale alleges the prison doctor prescribed a diabetic snack to better control his blood sugar level. Dale claims

13

the prison doctor prescribed the snack to be consumed as needed when Dale's blood sugar levels were low.  He asserts, however, that defendant Tyler has interfered with medical orders, prohibited him from consuming his diabetic snack as prescribed and has in fact disciplined him for consuming his diabetic snack as prescribed.  Again, as to his diabetic condition, for purposes of a motion to dismiss, Dale has sufficiently alleged a serious medical need, and that the defendants were aware of the need but were deliberately indifferent to it.

Liberally construed, Dale has sufficiently alleged the defendants have been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment prohibition against cruel and unusual punishment.  The court recommends the defendants' motion to dismiss be DENIED as to these claims.

### 3. Retaliation and Fourteenth Amendment Due Process Claims

"A prisoner's Eighth Amendment rights are violated if prison officials 'impose a disciplinary sanction [or otherwise take adverse action] against a prisoner in retaliation for the prisoner's exercise of his constitutional right.' " Meuir v. Greene Cnty. Jail Employees, 487 F.3d 1115, 1119 (8th Cir. 2007) (quoting Goff v. Burton, 7 F.3d 734, 738 (8th Cir. 1993)).[2] To establish a prima facie case of retaliatory discipline, a plaintiff must show that "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the

---

[2] That Dale did not specifically assert his retaliation cause of action is grounded in the Eighth Amendment does not mandate its dismissal.

14

prisoner; and (3) exercising the right was the motivation for the discipline."
Haynes v. Stephenson, 588 F.3d 1152, 1155 (8th Cir. 2009).

Dale alleges (1) he exercised his constitutionally protected rights to practice his Jewish faith by eating a kosher diet and to access the courts by filing this and other lawsuits; (2) prison officials disciplined him; and (3) exercising his constitutional right was the motivation for the discipline, because other prisoners who engaged in similar conduct were not disciplined. Dale has, therefore, alleged facts sufficient to survive a motion to dismiss on his retaliation claim.  The court recommends the defendants' motion to dismiss be DENIED as to Dale's retaliation claims.

Dale's Fourteenth Amendment due process claim is more difficult to discern.  Dale alleges that when he has been disciplined, the defendants have changed the charges in his disciplinary reports from a major violation to a minor violation without giving him appropriate notice and have subsequently found him guilty and imposed punishment for the minor violation.  He also alleges  the minor violation with which he is frequently charged ("V-16—conduct which disrupts") is such a vague charge that it amounts to nothing more than a catch-all write up used by prison officials to harass, intimidate and retaliate against Dale or any other inmate whom the prison staff does not like.  Dale refers to the V-16 write-up as the "because I said so" rule because it is vague and ambiguous and does not specify which behavior or actions might cause a violation.   Dale claims these deficiencies in the DOC's disciplinary procedures rise to the level of constitutional Due Process violations.

In their brief, defendants assert Dale's Due Process argument fails because although a rule is "void for vagueness if its prohibitions are not clearly defined" courts should be reluctant to "enmesh themselves in the day to day operations of a penal institution."  See Docket 21 at p. 12 (citing Grayned v. City of Rockford, 408 U.S. 104, 108 (1972) and White Eagle v. Storie, 456 F. Supp. 302, 307 (D. Neb. 1978)).  The defendants further assert disciplinary rule V-16 is not unconstitutionally vague and ambiguous because the conduct which it prohibits is clear:  it only prohibits conduct which disrupts or interferes with the good order of the institution, conduct which disrupts or interferes with the security of the institution, and/or conduct which interrupts or interferes with the performance of a staff member's duties.  See Docket 21, p. 13.

The court will grant the defendants' motion to dismiss Dale's Due Process claim, but not for the reasons articulated by the defendants.  A prison inmate's right to due process  regarding his classification (and accompanying privileges or lack thereof) within prison walls was clarified and greatly circumscribed by the United States Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995).  In that case, the Court stated:

> . . . States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id., at 483-84 (citations omitted).  The Court held that the prisoner's discipline in segregated confinement "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  Id. at 486.

In Freitas v. Ault, 109 F.3d 1335 (8th Cir. 1997), the prisoner plaintiff complained his Due Process rights were violated when he was disciplined and transferred to a different facility and placed in "on- call" status.  These disciplinary measures meant the prisoner was:  placed in "lock-up" (i.e. was allowed out of his cell for only one or two hours per day), allowed fewer visitors and no phone calls, not allowed to work at a prison job, restricted in his ability to keep personal items in his cell, and restricted in his ability to earn good time credits.  The Eighth Circuit held as a matter of law that "these conditions do not constitute any atypical and significant hardship when compared to the burdens of ordinary prison life." Id. at 1337.  See also, Griggs v. Norris, 297 Fed. Appx. 553, 555 (8 th Cir. 2008) (two, thirty day placements in punitive segregation and placement in administrative segregation for less than twenty days did not constitute atypical and significant hardship that would trigger protection of the Due Process clause).

In light of Sandin,  Freitas, and Griggs,  Dale's Due Process claims cannot survive the defendants' motion to dismiss.  Dale claims that as a result of his disciplinary proceedings, he has been (at most) punished with seven days' room restriction.  Pursuant to the above-cited authority, seven days' room restriction is not a significant and atypical hardship that would trigger the

17

protection of the Due Process clause.  It is recommended to the district court that as to Dale's Due Process claims, the defendants' motion to dismiss be GRANTED.

**D.   Sufficiency of Dale's Claims Against Defendants Dooley, Deglman & Schieffer**

In their Brief, the defendants urge that Dale's Amended Complaint fails to sufficiently allege any cause of action against defendants Dooley, Deglman and Schieffer.  The court agrees.

Defendant Dooley is the Warden of the Mike Durfee State Prison and the Director of Prison Operations for the South Dakota DOC.  See http://news.sd.gov/newsitem.aspx?id=14152 (last checked March 5, 2015) and http://doc.sd.gov/adult/facilities/mdsp/ (last checked March 5, 2015). Dale alleges George Deglman is a Unit Manager at MDSP.  See Amended Complaint, Docket 11, at ¶ 6.  Dale alleges Rebecca Schieffer is the Administrative Remedy Coordinator at MDSP.  Id.  at ¶ 5.

The allegations against these supervisory DOC employees in Dale's Amended Complaint are scant. Warden Dooley is named in the caption and not again until the "Claims for Relief" section, where Dale asserts:

> Defendant Dooley violated and conspired with other defendants to violate the plaintiff's First, Eighth, and Fourteenth Amendment rights  . . .by tacitly authorizing defendants Tjeerdsma, Meyer, Doyle and unknown Department of Corrections staff to retaliate against the plaintiff for practicing his religious beliefs, by not allowing defendants Gates, Hanvey and Unknown Department of Corrections Medical Staff to treat the plaintiff for his Hepatitis-C  . . . by allowing or tacitly authorizing defendants Doyle and Tyler to retaliate against the plaintiff for exercising his right to court access, by allowing Defendants Dejong and Tyler to interfere with plaintiff's prescribed medical care, and by turning a blind eye and

18

being deliberately indifferent to the ongoing Constitutional violations occurring at Mike Durfee State Prison.

See Amended Complaint, Docket 11, at ¶ 100.  Dale makes a similar conclusory claim regarding Defendant Deglman:

> [D]efendant Deglman and Schieffer violated Plaintiff's first, Eighth and Fourteenth rights under the United States Constitution by turning a blind eye and being deliberately indifferent to the ongoing constitutional violations occurring at Mike Durfee States Prison.

Id. at ¶ 105.  As to defendant Schieffer, Dale asserts that she:

> refused to respond to many of the requests for administrative remedy that the plaintiff has filed by intentionally misstating the facts regarding the issues raised. Defendant Schieffer will falsely claim that the plaintiff did not file his administrative remedy request on time, that the plaintiff raised more than one issue in his administrative remedy request, or that the plaintiff cannot file an administrative remedy request on that issue.  Defendant Schieffer does this intentionally to deny, or delay, the plaintiff's access to the courts because the Prison Litigation Reform Act (PRLA) requires that an inmate exhaust the administrative remedy process before filing a 42 U.S.C. § 1983 action (the plaintiff is not raising this issue with the court in this action, but is currently working on a class action regarding this, and other issues).

Id. at ¶ 96-98.

"In the section 1983 context, supervisor liability is limited.  A supervisor cannot be held liable, on a theory of respondeat superior, for an employee's unconstitutional actions."  White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). Rather, a supervisor incurs liability for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993).  "The supervisor must know about the conduct, and facilitate it, approve it, condone it, or turn a blind

19

eye for fear of what  [he or she] might see." Ripson v. Alles, 21 F.3d 805, 809

(8th Cir. 1994) (citations omitted).

> Further,

> [b]ecause vicarious liability is inapplicable to § 1983 suits, a
> plaintiff must plead that each Government-official defendant,
> through the official's own individual actions, has violated the
> Constitution. Ashcrof v. Iqbal, 556 U.S. 662 (2009).  Thus, each
> Government official, his or her title notwithstanding, is only liable
> for his or her own misconduct.  As we have held, a supervising
> officer can be liable only if he directly participated in the
> constitutional violation, or if his failure to train or supervise the
> offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted, internal

punctuation altered).  Dale's amended complaint falls short.  Although he

parrots the legal standard that the supervisory employees "tacitly authorized"

the conduct of the other defendants or "turned a blind eye," that is not enough.

Courts are not required to accept as true legal conclusions "couched as factual

allegation[s]" contained in a complaint.  Iqbal, 556 U.S. at 678. (citing Papasan,

478 U.S. at 286).  "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." Id. (quoting

Twombly, 550 U.S. at 555).   As such, it is recommended to the district court

that defendants' motion to dismiss as to individual defendants Dooley,

Deglman and Schieffer be GRANTED.

**E.     Dale's Official Capacity Claims for Monetary Damages**

The Defendants also request that Dale's official capacity claims against

all the named defendants for monetary damages be dismissed.  Again, the

court agrees.

20

Dale sues all defendants in both their official capacities and their individual capacities.  See Docket 11 at ¶ 2-12.  The state of South Dakota has immunity from suit in this federal forum under the Eleventh Amendment to the United States Constitution.  Kentucky v. Graham, 473 U.S. 159, 170 (1985).  Defendants argue that suing them in their official capacity is the same as suing the state itself.  See Docket No. 21 at pp. 15-17.

In Will v. Michigan Dept. of State Police, 491 U.S. 58, 60-61 (1989), a plaintiff brought a § 1983 claim against various state officials in their official capacity.  Section 1983 provides a cause of action for deprivations of constitutional rights done by a *"person"* acting under color of state law.  Id. at 60 n.1 (citing 42 U.S.C. § 1983).  The Court held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  Id. at 71 (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).  "As such," the Court continued, "it is no different from a suit against the State itself."  Id. (citing Graham, 473 U.S. at 165-66; Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 690, n.55 (1978)).  The Will Court held, therefore, that "neither a State nor its officials acting in their official capacities are 'persons' [amenable to suit] under § 1983."  Id.

The Will analysis and holding apply squarely to Dale's official capacity claims insofar as they seek money damages.  All named defendants are employees of the state of South Dakota.  As such, a suit against any of them in their official capacities is tantamount to a suit against the state of South Dakota itself.  Such claims are not recognized under 42 U.S.C. § 1983.

21

Accordingly, it is recommended to the district court that the defendants' motion to dismiss be GRANTED as Dale's official capacity claims for which he seeks monetary damages.

## F.    Qualified Immunity

Defendants devote a short section of their brief (Docket 21, pp. 17), to their argument that Dale's amended complaint should be dismissed because they are entitled to qualified immunity.  The proper standard for qualified immunity at the Rule 12(b)(6) stage is "whether immunity is established on the face of the complaint."  Schatz Family v. Gierer, 346 F.3d 1157, 1159-60 (8th Cir. 2003) (citation omitted).  In other words, "to prevail at this stage of the proceedings, defendants must show they are entitled to qualified immunity on the face of the complaint."  Bradford v. Huckabee, 394 F.3d 1012, 1015 (8th Cir. 2005) (citation omitted).  In Weaver v. Clarke, 45 F.3d 1253 (8th Cir. 1995) the Eighth Circuit explained that a 12(b)(6) motion to dismiss based on qualified immunity is viewed in the light most favorable to the non-moving party.  Id. at 1255.

The prisoner plaintiff in Weaver claimed the defendants violated his constitutional rights because he was exposed to excessive cigarette smoke in his cell.  The district court denied the defendants' motion to dismiss based on qualified immunity.  The Eighth Circuit affirmed.  Id. at 1256.  The Court's analysis followed the familiar qualified immunity path:  has the plaintiff alleged the violation of a constitutional right, and was that constitutional right 'clearly established' at the time of the alleged violation?  The Court began by

22

acknowledging the constitutional right implicated by Weaver's complaint was grounded in the Eighth Amendment's prohibition against cruel and unusual punishment in the form of deliberate indifference to serious medical needs.  <u>Id.</u> The Court emphasized that because it was analyzing the qualified immunity analysis in the context of a 12(b)(6) motion, "we accept the factual allegations in the complaint as true."  <u>Id.</u> at p.1256, n.3.  The Court continued, "[v]iewed in the light most favorable to Weaver, the complaint portrays the prison officials as consistently unwilling to enforce the smoking ban in Weaver's room and repeatedly unresponsive to any of Weaver's requests and protests.  We conclude that Weaver has alleged deliberate indifference to his existing serious medical needs and thus has alleged the violation of a constitutional right."  <u>Id.</u> at 1256.  The Court found the constitutional right being alleged by Weaver was clearly established because the contours of a deliberate indifference claim "were first recognized by the Supreme Court almost two decades ago [in] <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976) . . ."  <u>Id.</u>  The Court concluded that "[b]ecause Weaver has alleged the violation of a clearly established constitutional right, the defendant prison officials are not entitled to dismissal on the basis of qualified immunity."  <u>Id.</u>

The same analysis applies in this case.  The court has already determined that Dale has sufficiently alleged the violation of a clearly established constitutional right.  Because the defendants are raising the qualified immunity defense at the 12(b)(6) stage of the proceedings, the qualified immunity analysis ends at the determination that the plaintiff's

23

pleadings are sufficient to state a claim.  Weaver, 45 F.3d at 1256, Bradford, 394 F.3d at 1015, Schatz, 346 F.3d 1159-60.

In their brief, the defendants insist they have not interfered with Dale's First Amendment right to exercise his religion, have not retaliated against Dale for exercising his constitutional rights, and they have not been deliberately indifferent to his serious medical needs.  In his responsive papers, Dale indicates otherwise, and both parties apparently wish to present further documentary evidence to prove their cases.  See Docket 26, attaching copies of disciplinary reports; Docket 29, attaching copies of disciplinary reports.  As explained in Payne v. Britten, 749 F.3d 697, 702 (8th Cir. 2014), however, "this is a case where . . .ultimately and eventually the documents will matter for the qualified immunity analysis.  Nevertheless, the district court may not force public officials into subsequent stages of litigation without first ruling on a properly presented motion to dismiss asserting the defense of qualified immunity."  Id. at 702.  In Payne, the Eighth Circuit directed that although the district court correctly determined it needed more information to make a decision on the defendants' qualified immunity determination, the defendants were "entitled to a reasoned denial or grant of their claim of qualified immunity at the motion to dismiss stage, the summary judgment stage, and any other permissible stage at which a proper motion is filed."  Id.

"[Plaintiff] may indeed fail to prove [his] allegations . . .but that is irrelevant to the consideration of defendants' Rule 12(b)(6) motion to dismiss.  Moreover, the defendants ultimately may establish they are entitled to qualified

immunity, but  . . .they have not done so yet." <u>Hafley v. Lohman,</u> 90  F.3d 264, 267 (8th Cir. 1996).   The same is true here.

Following the <u>Payne</u> directive, the court recommends that defendants' motion to dismiss based on qualified immunity be DENIED without prejudice to their ability to re-file at the summary judgment stage.  This recommendation is based solely upon the court's finding that pursuant to <u>Weaver</u>, viewed in the light most favorable to Dale and assuming the allegations in his amended complaint are true, he has sufficiently *alleged* the violation of a clearly established constitutional right.

## CONCLUSION and RECOMMENDATION

For the reasons more fully explained above, it is RECOMMENDED to the district court:

(1) Defendants' Motion to Dismiss (Docket 20) be GRANTED as to:

   (A) All of Dale's Due Process Claims;

   (B) All of the Claims against Defendants Dooley, Deglman and Schieffer;

   (C) All official capacity claims for money damages against all named defendants;

(2) The balance of the Defendants' Motion to Dismiss be DENIED without prejudice to their ability to re-assert these arguments in a properly supported motion for summary judgment.

### NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely

objections will result in the waiver of the right to appeal questions of fact.

Objections must be timely and specific in order to require de novo review by the

District Court.  <u>Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v. Black</u>, 781

F.2d 665 (8th Cir. 1986).

     DATED this 13th day of  April, 2015.

               BY THE COURT:

               VERONICA L. DUFFY
               United States Magistrate Judge